STATE OF NORTH CAROLINA v. HERBERT MELTON JACOBS

No. COA97-127

(Filed 17 February 1998)

**1. Rape and Allied Sexual Offenses § 116 (NCI4th)— second-degree sexual offense—evidence of force—sufficient**

The trial court did not err in denying defendant's motion to dismiss charges of second-degree sexual offense where there was sufficient evidence of force.

**2. Evidence and Witnesses § 2415 (NCI4th)— motion to declare a material witness—testimony cumulative—motion denied**

The trial court did not abuse its discretion in the prosecution of a scoutmaster for sexual offenses by denying defendant's motion that a former scout then serving in the U.S. Army in Korea be declared a material witness. This testimony was not necessary to refute other testimony of the State's theory of a "common scheme" to molest boys in the scout troop; moreover, it would have been cumulative, and, as such, not material to guilt or innocence.

**3. Indictment, Information, and Criminal Pleadings § 43 (NCI4th)— bill of particulars denied—no error**

The trial court did not abuse its discretion in the prosecution of a scoutmaster for sexual offenses by denying defendant's motion for a bill of particulars. Defendant committed sexual offenses at various times over a period of years, the State provided as much specific information as to the time of the various incidents as was available, there is no contention that the State's proof at trial was more specific as to dates than the information which had been provided to defendant, and defendant failed to show that his defense was significantly impaired by the lack of information sought in the bill of particulars.

**4. Criminal Law § 837 (NCI4th Rev.)— sexual offenses— instructions—reference to victims—no error**

The trial court did not commit plain error in the prosecution of a scoutmaster for sexual offenses by using "victims" when referring to the complainants where the court used the term to describe the required elements of the various offenses and its use of the word could not reasonably have been understood as an expression of an opinion as to defendant's guilt or innocence.

**5. Constitutional Law § 327 (NCI4th)— speedy trial—no violation**

Defendant-scoutmaster's constitutional rights to a speedy trial for sexual offenses were not violated where the acts were committed in the early 1980's; defendant was originally arrested in 1990; those charges were voluntarily dismissed by the State and the record of the charges was expunged at defendant's request in 1990; warrants for the current charges were issued in November of 1993; defendant was indicted in June 1994; and his trial commenced in May 1996. The length of the delay triggers the exam in *Barker v. Wingo*, 407 U.S. 514, but defendant contributed significantly to the delay by seeking extensions of time; defendant first asserted his right to a speedy trial nearly two and a half years after the warrants were issued for the current charges; and defendant failed to show prejudice by the delay.

**6. Criminal Law § 669 (NCI4th Rev.)— prior voluntary dismissal—records expunged—investigative records retained**

Defendant-scoutmaster's rights to due process were not violated by the district attorney retaining investigative records where defendant was charged with sexual offenses in 1990; those charges were voluntarily dismissed by the State; the record of these charges was expunged at defendant's request in 1993; and the district attorney's office retained investigative materials. Neither N.C.G.S. § 15A-146 nor the order of expunction requires destruction of investigative files; moreover defendant showed no prejudice.

**7. Constitutional Law § 171.1 (NCI4th)— double jeopardy— former prosecution—voluntary dismissal**

Defendant was not subjected to double jeopardy where a former prosecution for sexual offenses was voluntarily dismissed by the State before a jury had been empaneled.

STATE v. JACOBS

[128 N.C. App. 559 (1998)]

Appeal by defendant from judgments entered 28 May 1996 by Judge Ronald K. Payne in Gaston County Superior Court. Heard in the Court of Appeals 9 October 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Margaret A. Force, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

MARTIN, John C., Judge.

Defendant was indicted on 6 June 1994 upon four counts of second degree sexual offense, four counts of taking indecent liberties with a minor, and one count of crime against nature. The offenses were alleged to have occurred at various times between 1 June 1980 and 30 September 1983. The alleged victims were Kelly Collins and Glenn Clark, both of whom were alleged to have been under the age of 16 years at the time. Defendant entered pleas of not guilty.

The State offered evidence tending to show that defendant, who was more than thirty years of age, was a Boy Scout scoutmaster in Gastonia when Glenn Clark, then twelve years of age, joined his scout troop in November 1979. Kelly Collins became involved in defendant's scout troop in 1981, when he was twelve years old. Both Collins and Clark testified they were small for their age.

Briefly summarized, Collins testified that he looked up to defendant as a father figure. Defendant often invited Collins to defendant's apartment, or took him to movies, swimming, or to play putt-putt golf. Collins testified that on several occasions, he spent the night at defendant's apartment and that defendant came into the room where he was sleeping and kissed him, rubbed him and fondled his penis with his hand. After defendant moved from the apartment to a house, Collins spent the night with defendant. During the night, defendant came into the room where Collins was sleeping, removed his shorts, and performed fellatio on him. Collins testified that he was afraid and did not tell anyone about the incidents at the time. He quit the Boy Scouts when he was fifteen. After Collins was in college, he confided in his girlfriend and a track coach about the incidents.

Clark testified that defendant often invited him over to his apartment or his house and often served him alcoholic beverages. On one occasion, defendant played a game with him which required Clark to

remove articles of clothing, after which defendant fondled his penis and performed fellatio on him. Clark testified about several other occasions, involving both scouting activities and visits to defendant's apartment and house, when defendant engaged in similar conduct, fondling him and performing fellatio on him. On two occasions, one in June or July of 1983 and the other in September of 1983, defendant had forcible anal intercourse with Clark at defendant's house.

The State also offered the testimony of three other witnesses, Steven Johnson, Brian Thomas and Paul Lyman, who testified that defendant had also been their scoutmaster. They described various incidents in which defendant had engaged in similar conduct with them when they were young teenagers.

Defendant offered the testimony of Mary Cook, a social worker who had investigated defendant to determine his suitability to adopt a child. Ms. Cook testified that she had made several visits to defendant's home, including surprise visits, and had never observed any unusual conduct. She approved him for adoption. Several of defendant's former scout troop members testified that they had often spent the night at defendant's residence on weekends and had neither experienced nor observed any inappropriate sexual behavior. In addition, defendant offered testimony of parents of former scouts, as well as other scout leaders, to the effect that they had never observed any inappropriate behavior on defendant's part. Finally, defendant's adopted son testified that he had never been sexually abused by defendant.

The jury found defendant guilty of three counts of second degree sexual offense, one count of crime against nature, and three counts of taking indecent liberties with a minor. He appeals from judgments imposing active terms of imprisonment totaling seventy-seven years.

_____

In his brief, defendant has presented arguments in support of the questions raised by eight of the twenty-five assignments of error contained in the record on appeal. Pursuant to N.C.R. App. P. 28(a) defendant's remaining seventeen assignments of error are deemed abandoned. We have carefully considered defendant's arguments and find no prejudicial error in his trial.

I.

**[1]** Defendant first argues that the trial court erred in denying his motion to dismiss because there was insufficient evidence of force to

support the charges of second degree sexual offense by fellatio. G.S. § 14-27.5 provides in pertinent part:

(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

(1) By force and against the will of the other person.

Fellatio is included as a sexual act within the meaning of the statute. *State v. Baker*, 333 N.C. 325, 426 S.E.2d 73, *disc. review denied*, 334 N.C. 435, 433 S.E.2d 180 (1993). The phrase "by force and against the will of the other person" has the same meaning here as it does in the context of rape. *State v. Locklear*, 304 N.C. 534, 284 S.E.2d 500 (1981). The force required "need not be physical force. Fear, fright, or coercion may take the place of force." *Id.* at 539, 284 S.E.2d at 503.

On a motion to dismiss the court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. *State v. Ethridge*, 319 N.C. 34, 352 S.E.2d 673 (1987). The judge must decide if there is substantial evidence of each element of the offenses charged. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 47, 352 S.E.2d at 681.

When substantial evidence supports a finding that the crime was committed, and that a defendant is the criminal agent, the case must be submitted to the jury. The evidence need not exclude every reasonable hypothesis of innocence in order to support the denial of a defendant's motion to dismiss.

*State v. Parks*, 96 N.C. App. 589, 594, 386 S.E.2d 748, 751 (1989).

Viewed in the light most favorable to the State, the evidence in this case was sufficient to submit the offenses of second degree sexual offense to the jury. Collins testified that on the occasion when defendant performed fellatio on him, he was awakened by defendant's tongue in his mouth, and he struggled to move it away. He also testified that he tried to prevent defendant from pulling his pants down, but was unsuccessful. He explained that he was afraid of defendant because he left guns around the house and talked about his skill in using them. Clark testified that defendant "made" him take off his clothes and put on defendant's shorts. He said that he did not consent to oral sex and tried to resist it but defendant would tell him, "Oh it's okay. It's okay. I love you." He testified that he was small for his

age and defendant, who was much bigger, would often hold him down to commit the sexual offenses. We hold there was sufficient evidence of force, including "fear, fright and coercion," to withstand defendant's motion to dismiss the charges.

II.

[2] Defendant next assigns error to the denial of his motion to declare Greg Stewart a material witness. In his motion, defendant asserted that Stewart would offer testimony tending to impeach that given by a State's witness, Brian Thomas. Thomas testified that while he was a member of defendant's scout troop, defendant had fondled his penis on two occasions and had performed fellatio on him on another occasion. Defendant asserted that Stewart, who was serving in the U.S. Army in Korea at the time of trial, would testify that he had been a member of defendant's scout troop and had been on numerous camping trips with defendant and other scouts and that he had also spent the night at defendant's house on numerous occasions and had never witnessed or been made aware of any inappropriate behavior on defendant's part. Defendant argued that Stewart's testimony was essential to contradict that given by Thomas. His motion was denied.

G.S. § 15A-803 authorizes a court to issue an order assuring the presence of a material witness and sets forth the procedure for doing so. Although the record does affirmatively show that defendant complied with the procedural requirements of the statute, we will address the issue on its substantive merits. G.S. § 15A-803(a) provides:

(a) Material Witness Order Authorized.—A judge may issue an order assuring the attendance of a material witness at a criminal proceeding. This material witness order may be issued when there are reasonable grounds to believe that the person whom the State or a defendant desires to call as a witness in a pending criminal proceeding possesses information material to the determination of the proceeding and may not be amenable or responsive to a subpoena at a time when his attendance will be sought.

N.C. Gen. Stat. § 15A-803(a) (1997). "The use of the term 'may' suggests that the granting or denial of a motion for a material witness order is a matter committed largely to the discretion of the judge." *State v. Tindall*, 294 N.C. 689, 698, 242 S.E.2d 806, 811 (1978). However, this discretion must "be exercised in a manner not inconsistent with the Sixth Amendment's guaranty that a criminal defend-

ant be afforded 'compulsory process for obtaining witnesses in his favor.' " *Id.* at 698, 242 S.E.2d at 811-12.

Contrary to defendant's argument, Stewart was not a material witness in this case because his testimony was not necessary in order for defendant to refute that given by Thomas or to negate the State's theory that defendant had a "common scheme" to molest boys in his scout troop. Defendant made no showing that Stewart's testimony would relate to any of the specific incidents charged in the bills of indictment or any of those about which Thomas testified. Moreover, defendant offered a number of other witnesses, including nine former scouts and several of their parents, who testified that they had neither been sexually abused by defendant nor witnessed any inappropriate behavior by him. Stewart's testimony on the issue would have been merely cumulative and, as such, not material to the determination of defendant's guilt or innocence. The trial court did not abuse its discretion in denying defendant's motion that Stewart be declared a material witness or, as argued alternatively by defendant, in denying his motion to strike Thomas' testimony. Thomas' testimony was relevant and properly admissible under G.S. § 8C-1, Rules 404(b) and 403. These assignments of error are overruled.

## III.

[3] Next, defendant argues the trial court erred in denying his motion for a bill of particulars, which sought the specific dates on which the crimes were allegedly committed. The purpose of a bill of particular is "to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry." *State v. Moore,* 335 N.C. 567, 587, 440 S.E.2d 797, 809, *cert. denied,* 513 U.S. 898, 130 L.Ed.2d 174, *reh'g. denied,* 513 U.S. 1035, 130 L.Ed.2d 532 (1994). The decision to allow or deny a motion for a bill of particulars:

> is generally within the discretion of the trial court and is not subject to review "except for palpable and gross abuse thereof." . . . [A] denial of a defendant's motion for a bill of particulars will be held error only when it clearly appears to the appellate court that the lack of timely access to the requested information significantly impaired defendant's preparation and conduct of his case.

*Id.* at 588, 440 S.E.2d at 809 (quoting *State v. McLaughlin,* 286 N.C. 597, 603, 213 S.E.2d 238, 242 (1975), *death sentence vacated,* 428 U.S. 903, 49 L.Ed.2d 1208 (1976)).

No abuse of discretion has been shown here. Time is not of the essence of the offenses charged in these cases. *See State v. McKinney*, 110 N.C. App. 365, 430 S.E.2d 300, *disc. review denied*, 334 N.C. 437, 433 S.E.2d 182 (1993). The evidence showed that defendant committed the acts upon Collins and Clark at various times over a period of years. Prior to trial, the State provided as much specific information as to the time of the various incidents as was available to it and there has been no contention that the State's proof at trial was more specific as to dates than the information which had been provided to defendant. Moreover, defendant has made no showing that the preparation of his defense was significantly impaired by the lack of the information sought by his bill of particulars. Thus, we reject this assignment of error.

IV.

**[4]** Next defendant argues that the trial court erred in referring to the complainants in this case as "victims" in the jury instructions. Defendant did not object at trial to the court's use of the word "victims" in its instructions, and it is well known that " 'a failure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error on appeal.' " *State v. Walker*, 316 N.C. 33, 37, 340 S.E.2d 80, 82 (1986) (quoting *State v. Oliver*, 309 N.C. 326, 334, 307 S.E.2d 304, 311 (1983)). Nevertheless, defendant argues the court committed "plain error"; additionally, he asks that we exercise the discretion granted us by N.C.R. App. P. 2 to review the alleged error. In *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983), our Supreme Court adopted the "plain error" rule which permits review of a certain claimed error so fundamental or egregious as to have a probable impact on the outcome of the trial even though the error was not brought to the attention of the trial court by a proper objection.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Walker* at 39, 340 S.E.2d at 83 (quoting *State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983)). The plain error rule applies only in truly exceptional cases where the appellate court is convinced that "absent the error the jury probably would have reached a different verdict." *Id.* N.C.R. App. P. 2 permits this Court to suspend or vary the requirements of the appellate rules, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest."

In this case, the contended error in the trial court's jury instructions neither rises to the level of plain error nor warrants our application of Rule 2. Before defining the elements of the various offenses, the trial court carefully explained that it would refer to the names of the "*alleged* victims" in discussing the charges. The court used the term "victim" in its instructions simply to define and describe the required elements of the various offenses; its use of the word could not reasonably have been understood as an expression of an opinion as to defendant's guilt or innocence. Defendant has shown neither manifest injustice nor a probable effect on the outcome of the trial as a result of the trial court's use of the word "victim." This assignment of error is overruled.

V.

[5] Next, defendant argues that the court erred in denying his pretrial motion to dismiss on speedy trial, double jeopardy, and due process grounds. Defendant was originally arrested in October 1990 for sexual offenses allegedly committed against Collins. Those charges were voluntarily dismissed by the State, and the record of those charges was expunged in 1991 at defendant's request. Warrants for the current charges against defendant were issued in November 1993; he was indicted in June 1994; and his trial commenced on 20 May 1996.

There are four factors which the court should consider in determining whether a criminal defendant has been denied his right to a speedy trial, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 18 of the North Carolina Constitution. Those factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) whether the defendant has suffered prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101 (1972); *State v. Flowers*, 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997).

The length of the delay is not per se determinative of whether the defendant has been deprived of his right to a speedy trial. The United States Supreme Court has found post-accusation delay "presumptively prejudicial" as it approaches one year. However, presumptive prejudice "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."

*Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 120 L.Ed.2d 520, 528 n.1 (1992)). In this case, the length of the delay triggers the *Barker* examination.

With respect to the reason for the delay, defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution. *Id.* Here defendant has not shown such neglect or willfulness by the prosecution; in fact, the record suggests that defendant contributed significantly to the delay. His former counsel, Stephen Gheen testified that in October 1994 defendant asked for a delay in his arraignment in order to consider whether to appeal the trial court's rulings with respect to earlier defense motions. Mr. Gheen also testified that the State had reluctantly agreed to defendant's requests for other extensions of time, and that defense motions with respect to the production of medical records had resulted in delays. Additionally, delays were occasioned by the withdrawal and replacement of defendant's co-counsel. Thus, defendant has not shown, as required, that the delay resulted from "neglect and willfulness" on the part of the State.

Defendant first asserted his right to a speedy trial in a motion filed 17 April 1996, nearly two and a half years after the warrants were issued for the current charges. "Defendant's failure to assert his right to a speedy trial sooner in the process does not foreclose his speedy trial claim, but does weigh against his contention that he has been denied his constitutional right to a speedy trial." *Flowers* at 28, 489 S.E.2d at 407.

Defendant has also failed to show prejudice by the delay. The only ways in which defendant argues he was prejudiced is by the unavailability of Greg Stewart as a witness and the unavailability of certain investigative materials gathered in connection with the investigation of the 1990 charges. As we have previously discussed, Stewart's presence as a witness was not essential since there were numerous other witnesses who testified with respect to the same

STATE v. JACOBS

[128 N.C. App. 559 (1998)]

information which he possessed; hence, defendant was not prejudiced by his unavailability. The destruction of the earlier investigative materials did not result from the pre-trial delay; rather, the materials were destroyed by the police in order to comply with the court's order granting defendant's request that records relating to the voluntarily dismissed 1990 charges against him be expunged. We hold that defendant's constitutional right to a speedy trial has not been violated.

**[6]** Defendant also argues that his rights to due process were violated because the district attorney's office retained investigative materials relating to the 1990 charges even though the court had ordered expunction of entries relating to those charges from the public records. G.S. § 15A-146 authorizes the court, in certain instances, to order expunction from all official records of entries relating to the arrest or trial of a person seeking the order. The purpose of the statute is to clear the public record of entries so that a person who is entitled to expunction may omit reference to the charges to potential employers and others, and so that a records check for prior arrests and convictions will not disclose the expunged entries. Neither the statute nor the order of expunction entered at defendant's request requires the destruction of investigative files. Moreover, defendant has shown no prejudice. We find no violation of due process and reject his argument.

**[7]** Nor do we find a violation of defendant's right against being twice placed in jeopardy for the same offense. The former prosecution was voluntarily dismissed by the State before a jury had been empaneled and before jeopardy had attached. *State v. Strickland*, 98 N.C. App. 693, 391 S.E.2d 829, *disc. review denied*, 327 N.C. 436, 395 S.E.2d 695 (1990).

VI.

In his final assignment of error defendant asserts the court erred in ruling that there was nothing of exculpatory value in the medical records of Glenn Clark, Brian Thomas and Kelly Collins. The records were reviewed *in camera* by the trial court, which found nothing of exculpatory value therein. Defendant requests that we review the record to determine if there are any materials which should have been disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215 (1963) and *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L.Ed.2d 40 (1987). We have done so and agree with the trial court's ruling.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges LEWIS and McGEE concur.