STATE OF NORTH CAROLINA v. ANTHONY LEON BROTHERS

No. COA01-867

(Filed 18 June 2002)

**1. Appeal and Error— preservation of issues—failure to renew motion**

The trial court did not err in a prosecution for first-degree statutory rape and other sexual offenses against a six-year-old girl by denying defendant's motion to introduce evidence of prior sexual activity by the victim. The court denied the motion with leave to renew, but defendant did not do so and the issue was not preserved for appeal.

**2. Evidence— other offenses—identity, pattern, common plan**

The trial court did not err in a prosecution for first-degree statutory rape and other sexual offenses against a six-year-old girl by admitting testimony from her sister as to other sexual acts committed by defendant. The prior acts showed identity, pattern, and a common plan or scheme.

**3. Evidence— medical testimony—basis**

The trial court did not err by admitting medical testimony to establish that a six-year-old victim had been sexually abused where defendant alleged that the testimony was based solely on the victim's history, but the doctor explicitly stated that her conclusion was based in part on the physical evidence of sexual abuse.

**4. Evidence— hearsay—medical diagnosis exception—double hearsay—child sexual abuse victim**

There was no prejudicial error in a prosecution for first-degree statutory rape and other sexual offenses against a six-year-old victim where the court admitted as substantive evidence a doctor's testimony regarding statements made by the victim's mother and a social worker that related statements by the victim. The question as to whether out-of-court statements of a parent recounting out-of-court statements of a child victim may be admitted pursuant to the medical diagnosis exception to the hearsay rule has not been addressed in North Carolina, and was not addressed here because defendant did not show prejudice.

**5. Sexual Offenses— short form indictment—constitutional**

The short form indictment for sexual offense and indecent liberties was constitutional.

**6. Sexual Offenses— bill of particulars—non-unanimous verdict**

The trial court did not err in a prosecution for sexual offenses committed against a six-year old child by refusing defendant's motion to require the jury to convict him on the specific acts set out in the bill of particulars. The threat of a non-unanimous verdict does not arise in indecent liberties cases because the indecent liberties statute does not list discrete criminal acts in the disjunctive. A defendant may be convicted of first-degree sexual offense even if the trial court instructs the jury that more than one sexual act may comprise an element of the offense.

**7. Sexual Offenses— instructions—penetration**

The trial court did not err when instructing the jury on first-degree sexual offense by defining a sexual act as any penetration, however slight, by an object into the genital opening of a person's body.

STATE v. BROTHERS

[151 N.C. App. 71 (2002)]

### 8. Indecent Liberties— instructions—touching

The trial court did not err in an indecent liberties prosecution by making explicit that a conviction required that the jury find that defendant touched the victim in an improper or indecent way, induced the victim to touch him in an indecent way, or attempted to commit a lewd or lascivious act upon the child.

### 9. Criminal Law— bill of particulars—evidence not inconsistent

There was no error in a prosecution for first-degree rape where defendant contended that he was denied a fair trial because the bill of particulars and the evidence at trial did not precisely establish the date and time of the alleged rape. The purpose of a bill of particulars is to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry; the testimony in this case was not inconsistent with the bill of particulars.

### 10. Criminal Law— instructions—rape and sexual offenses— unanimity—no federal constitutional violation

The trial court's instructions in a prosecution for first-degree statutory rape and sexual offense did not violate federal constitutional law; *Richardson v. United States*, 526 U.S. 813, is limited to federal prosecutions for continuing criminal enterprises and does not apply to this case.

Appeal by defendant from judgments entered 5 October 2000 by Judge Jerry R. Tillett in Pasquotank County Superior Court. Heard in the Court of Appeals 25 April 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Celia Grasty Lata, for the State.*

*Miles and Montgomery, by Lisa Miles, for defendant-appellant.*

MARTIN, Judge.

Defendant was charged with first degree statutory rape of a female child under thirteen, statutory sexual offense of a female child under thirteen, and three counts of taking indecent liberties with a child. Following a jury trial, defendant was convicted on all counts. The trial court arrested judgment on one count of taking indecent liberties with a child, and entered judgments on the remaining verdicts imposing active terms of imprisonment. Defendant appeals.

The State's evidence tended to show that the alleged victim, "E.S.," was eight years old at the time of the trial. E.S. testified that on one occasion of the sexual abuse, defendant, her stepfather, asked her to "sit on daddy's lap," at which point he pulled out his penis. On another occasion, E.S. testified that defendant woke her and "put his finger up in my private." On a third occasion defendant allegedly asked E.S. if she wanted to see "daddy's milk." She then indicated that defendant had his hand on his penis and ejaculated. On yet another occasion, defendant compelled E.S. to wash his penis. Finally, E.S. testified that defendant put Vaseline on his penis and put his "private part" into her "private part." According to E.S., defendant instructed E.S. not to tell anyone about the sexual acts.

Midge Hudyma, a child protective services investigator, testified for the State. Ms. Hudyma stated that after getting a report of possible sexual abuse from the police department and from the victim's mother, Ms. Hudyma interviewed E.S. at her elementary school. E.S., who was six years old at the time of the alleged acts, told Ms. Hudyma that her stepfather had touched her "kitty," which she indicated was her vagina. E.S. told Ms. Hudyma that defendant penetrated her with his fingers, and that defendant asked her to sit on his lap while his penis was exposed. E.S. also told Ms. Hudyma that defendant inserted his penis into her vagina. The trial court permitted this testimony for the limited purpose of corroborating the victim's prior testimony.

Dr. Rebecca Coker, a pediatrician certified as an expert in the diagnoses of sexually abused children, testified that E.S. was referred to her by the department of social services, and Dr. Coker conducted a complete physical examination of E.S. on 10 June 1999. Dr. Coker discovered scar tissue in the victim's vagina. Dr. Coker testified that she was concerned by a "very distorted fossa navicularis" inside the vagina and by "two bands of suspicious scar tissue." Dr. Coker concluded that "the patient had experienced trauma and based on the medical history, it was consistent with sexual abuse."

The victim's sister, "S.S.," was also permitted to testify pursuant to G.S. § 8C-1, Rule 404(b). S.S. stated that on one occasion she was sitting on a recliner watching television and defendant came up behind her and "started rubbing on my boobs." On another occasion S.S. was sleeping on the couch and woke up in the middle of the night and noticed the television was on, "so I turned around to watch TV and when I turned around [defendant] was standing in front of me with his thing out of his boxers again." S.S. stated that he was "jack-

ing off." On yet another occasion defendant woke S.S. while she slept and asked her to kiss him, but she would not. On other occasions S.S. testified that defendant felt her vagina and her breasts. S.S. was twelve years old when these incidents occurred.

Defendant did not present any evidence.

Defendant brings forward six assignments of error. Defendant has not presented arguments in support of the remaining twenty-six assignments of error contained in the record on appeal and they are deemed abandoned. N.C.R. App. P. 28(b)(5).

I.

[1] Defendant first argues the trial court erred by denying defendant's motion to introduce evidence of prior sexual activity of the complaining witness. Defendant filed a pre-trial motion to "introduce prior sexual activity of complaining witness" on the ground that the victim had explicit sexual knowledge based on incidents which allegedly occurred between her and a male cousin, and that cross examination on this point was necessary to provide an alternative explanation for the victim's sexual knowledge. The trial court denied defendant's motion, "with leave to be remade at some—if there is some—some reason something comes up that makes it at issue." Defendant never renewed his motion to cross examine E.S. as to her prior sexual experiences as a means of establishing an alternate explanation for the physical evidence of sexual abuse, even after the State presented the testimony of Dr. Rebecca Coker, who testified that a physical examination of the victim's genitalia revealed scar tissue consistent with sexual penetration. As a result, this assignment of error was not properly preserved for appeal. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.").

## II.

**[2]** Defendant next contends the trial court erred in admitting into evidence the testimony of S.S. as to sexual acts committed by defendant. Evidence of other crimes or acts is not admissible for the purpose of showing the character of the accused or for showing his propensity to act in conformity with a prior act. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2001). However, such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id.* The North Carolina Supreme Court has held that Rule 404(b) is a rule of inclusion. *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Indeed, North Carolina's appellate courts have been "markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)." *State v. Scott*, 318 N.C. 237, 247, 347 S.E.2d 414, 419-20 (1986) (citations omitted). Two constraints limit the use of evidence under Rule 404(b): "similarity and temporal proximity." *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

> When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor.

*Id.* The similarities between the crime charged and the prior acts admitted under Rule 404(b) need not " 'rise to the level of the unique or bizarre' " in order to be admissible. *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991) (citation omitted).

In the present case, the trial court admitted evidence of the prior acts on the grounds that it showed identity, a pattern of opportunity, and a common plan or scheme to commit sexual offenses against the victim and her sister, S.S. Defendant was the stepfather to both girls, and stayed at home while his wife, the girls' mother, was at work. Both girls were under the age of thirteen at the time of the sexual abuse and the incidents with respect to both girls occurred when they were alone with him. Both girls testified that defendant exposed and fondled himself in their presence, touched their genitalia on repeated

occasions, and masturbated in their presence. The trial court did not err in permitting the testimony of S.S. pursuant to Rule 404(b) to show identity, a pattern of opportunity, and a common plan or scheme to commit sexual abuses against his stepdaughters.

## III.

[3] Defendant next contends the trial court erred in admitting the opinion testimony of Dr. Coker that the victim had been sexually abused based solely on her history. Defendant takes the testimony of Dr. Coker out of context to advance the argument that Dr. Coker based her medical diagnosis solely on the victim's history, which mischaracterizes the State's evidence. Defendant's assignment of error is overruled.

North Carolina Rule of Evidence 702(a) provides that if

scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

In *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179 (2001), this Court held that opinion testimony of a clinical social worker that the victim had been sexually abused should not have been admitted because it was based entirely on the victim's statements and did not include physical evidence of sexual abuse. In addition, the North Carolina Supreme Court recently held that,

[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility.

*State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (citations omitted). In *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987), the Supreme Court held that the testimony of the physician in a rape and sexual abuse case was inadmissible because the State did not lay a proper foundation for the testimony. The physician made reference to a physical exam conducted four years after the date of the alleged offenses which revealed that the victim's hymen was not intact. However, the exam showed no "lesions, tears, abrasions, bleeding or otherwise abnormal conditions." *Id.* at 613, 359 S.E.2d at 465. In fact,

the testifying physician stated that the physical condition of the hymen alone "would not support a diagnosis of sexual abuse, but only a conclusion that the victim had been sexually active." *Id.* at 614, 359 S.E.2d at 466. The Supreme Court held that the expert was in no better position to testify as to whether the victim had been sexually abused years earlier than the members of the jury, and that his testimony was inadmissible pursuant to Rule of Evidence 702. *Id.*

In the present case, however, substantial *physical* evidence was presented by Dr. Coker to support her opinion that E.S. was sexually abused. Dr. Coker, a pediatrician who was permitted to testify as an expert in the diagnoses and treatment of sexually abused children, stated that she performed a complete physical examination of E.S. on 10 June 1999, when the victim was seven years old. Dr. Coker discovered scar tissue inside the victim's vagina. She testified that she noticed bands of tissue which distorted the "fossa navicularis" inside the vagina. She also referred to "suspicious scar tissue," which is not "a common or normal finding." Dr. Coker concluded that "*the patient had experienced trauma* and based on the medical history, it was consistent with sexual abuse" (emphasis added). The State's expert in this case explicitly stated that her conclusion was based in part on the physical evidence of sexual abuse. Because the State's expert based her conclusions on both the physical evidence and the medical history obtained from Midge Hudyma, a child protective services investigator, as well as the victim's mother, her expert opinion testimony was properly admitted under N.C.R. Evid. 702.

IV.

[4] Defendant next argues the trial court erred in admitting as substantive evidence hearsay testimony from Dr. Coker regarding statements made by the victim's mother, Gloria Brothers, and the social worker, Ms. Hudyma. As one of the exceptions to the general prohibition against the introduction of hearsay testimony, statements which are made for the purpose of medical diagnosis or treatment may be introduced as substantive evidence. N.C. Gen. Stat. § 8C-1, Rule 803(4). In this case, however, the statements of Ms. Brothers and Ms. Hudyma, as related through the testimony of Dr. Coker, revealed statements originally made by E.S.; accordingly, portions of Dr. Coker's testimony could be characterized as double hearsay.

E.S. testified in detail regarding several instances of sexual abuse by defendant, including one instance of vaginal intercourse. Defendant was permitted to cross examine E.S. regarding all of these

allegations. As part of Dr. Coker's examination of E.S., she received information from the victim's mother and from Midge Hudyma, a social worker investigating the allegations of sexual abuse. Dr. Coker recounted two statements attributed to E.S.'s mother: (1) that the mother walked in on one occasion while E.S. sat on defendant's lap with defendant's penis exposed, and (2) that E.S. later explained to her mother that defendant had inserted his "middle part" in her "middle part" in the past. This testimony is entirely consistent with the testimony of E.S., which defendant had ample opportunity to cross examine. The appellate courts of this State have not addressed the specific question of whether a treating physician may testify regarding out-of-court statements made by a parent recounting out-of-court statements made by a child victim pursuant to the medical diagnosis exception to the rule against hearsay. However, because in this case defendant has not shown prejudice, we do not reach the question. N.C. Gen. Stat. § 15A-1443(a) (2001) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant."). On this record defendant has not shown prejudice, and his assignment of error to the contrary is overruled.

## V.

**[5]** Defendant contends the trial court erred by not dismissing the indictments against him for sexual offense and indecent liberties because the "short-form" indictments did not specify the *actus reus* of each of the sexual crimes, thereby violating his due process rights. However, the short-form indictment, as defendant concedes, has been upheld as constitutional by our Supreme Court in *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *reh'g denied*, 531 U.S. 1120, 148 L. Ed. 2d 784 (2001). This assignment of error is overruled.

## VI.

**[6]** Finally, defendant argues the trial court erred in denying his motion to require the jury to convict him on the specific acts set out in the bill of particulars.

The North Carolina Constitution requires that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in

open court." Art. 1, § 24. However, our Supreme Court has held that the threat of a non-unanimous verdict does not arise in cases of indecent liberties because the statute, G.S. § 14-202.2, does not list, as elements of the offense, discrete criminal acts in the disjunctive. *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). A person is guilty of taking indecent liberties with a child if that person engages in "any immoral, improper, or indecent liberties." N.C. Gen. Stat. § 14-202.1. Thus, "[e]ven if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of 'any immoral, improper, or indecent liberties.'" *Hartness*, 326 N.C. at 565, 391 S.E.2d at 179. See also *State v. Foust*, 311 N.C. 351, 317 S.E.2d 385 (1984). A defendant may be convicted of first degree sexual offense even if the trial court instructs the jury that more than one sexual act may comprise an element of the offense. *Id.*

**[7]** In the present case, the trial court set forth the elements for first degree sexual offense, defining a sexual act as "*any* penetration, however slight, by *an object* into the genital opening of a person's body" (emphasis added). In order to find defendant guilty of first degree sexual offense, therefore, the jury was required to find that defendant inserted any object into the genital opening of the child. This instruction comports with G.S. § 14-27.1, which defines a sexual act as "penetration, however slight, by any object into the genital or anal opening of another person's body."

**[8]** With regard to the charge of taking an indecent liberty with a child, the trial court defined an indecent liberty as

> an immoral, improper, or indecent touching or act by the Defendant upon the child or inducement by the Defendant of an immoral, or indecent touching by the child, or that the Defendant committed or attempted to commit a lewd or lascivious act upon a child.

The trial court thus made explicit in its instructions that the jury must find that defendant touched E.S. in an improper or indecent way or induced E.S. to touch him in an indecent way, or that defendant attempted to commit a lewd or lascivious act upon the child in order to convict. The trial court committed no error in its instruction to the jury concerning the charges of indecent liberties with a child and first degree sexual offense.

**[9]** In addition, the North Carolina Supreme Court has rejected the argument that a defendant was denied a fair trial because the bill of particulars and the evidence presented at trial did not precisely establish the date and time of the alleged rape. *State v. Effler*, 309 N.C. 742, 309 S.E.2d 203 (1983).

> [A] child's uncertainty as to the time or particular day the offense charged was committed goes to the weight of the testimony rather than its admissibility, and nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time when the offense was committed where there is sufficient evidence that the defendant committed each essential act of the offense.

*Id.* at 749, 309 S.E.2d at 207 (citing *State v. King*, 256 N.C. 236, 123 S.E.2d 486 (1962)). The purpose of a bill of particulars is " 'to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry.' " *State v. Jacobs*, 128 N.C. App. 559, 565, 495 S.E.2d 757, 762, *disc. review denied*, 348 N.C. 506, 510 S.E.2d 665 (1998) (citation omitted). In this case the testimony was not inconsistent with the State's bill of particulars.

**[10]** Finally, defendant argues that even if the trial court's instructions comport with North Carolina case law, the instructions do not comply with federal constitutional law. In *Richardson v. United States*, 526 U.S. 813, 143 L. Ed. 2d 985 (1999), the defendant was charged with violating a federal criminal statute, 21 U.S.C. § 848, which forbids any person from engaging in a "continuing criminal enterprise." The criminal enterprise is defined as the violation of federal drug laws. *Id.* Based on the language of the federal statute, the United States Supreme Court held that a jury must unanimously agree on each of the violations making up the "continuing series of violations." *Id.* at 815, 143 L. Ed. 2d at 991. Nevertheless, the Court recognized that a jury in other cases "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* at 817, 143 L. Ed. 2d. at 992 (citations omitted). The holding in *Richardson* is therefore limited to federal prosecutions under 21 U.S.C. § 848, and does not apply to the instant case. Defendant's assignment of error is overruled.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges TYSON and THOMAS concur.