STATE OF NORTH CAROLINA v. WILLIE JACKSON HARRIS

No. 99

(Filed 16 June 1972)

1. **Constitutional Law § 29; Grand Jury § 3— grand jury — absence of persons 18 to 21 years old**

   The absence from the jury list of the names of persons between the ages of 18 and 21 during the period from 21 July 1971, the effective date of the amendment of G.S. 9-3 lowering the age requirement for jurors from 21 years to 18 years, and 7 September 1971, the date the indictment against defendant was returned, does not constitute systematic exclusion of this age group from grand jury service.

State v. Harris

2. Robbery § 4— armed robbery — weapon within reach

Evidence that defendant had a pistol within easy reach while he took the prosecutrix' money, that defendant had threatened the prosecutrix with it, and that she was in fear of her life when defendant took her money, *held* sufficient to be submitted to the jury in a prosecution for robbery with firearms.

3. Criminal Law § 89— cross-examination of defendant — indictments for other crimes — nonretroactivity of new rule

The rule that a witness, including the defendant in a criminal case, may no longer be cross-examined for impeachment purposes as to whether he has been indicted or is under indictment for a criminal offense other than that for which he is then on trial applies only to trials begun after 15 December 1971, the date of the decision of *State v. Williams,* 279 N.C. 663.

APPEAL by defendant from *McLean, J.,* at the 28 October 1971 Criminal Session of MECKLENBURG Superior Court.

Defendant was tried and convicted on separate bills of indictment for the rape and armed robbery of Evelyn Louise Jones. On the rape charge the jury recommended that defendant's punishment be imprisonment for life. From sentences of life imprisonment for the rape and 30 years' imprisonment for the armed robbery, defendant appealed to this Court under G.S. 7A-27 (a).

The prosecutrix testified that about 4 p.m. on 11 June 1971 she left work and was standing at a bus stop on Newland Road. A car driven by defendant stopped on the other side of the street. The driver, who was alone, called her. Thinking that she recognized him, she approached the car. When she drew nearer, she realized that she did not know him. At that point defendant pulled out a pistol and ordered her to get into the car. Defendant then drove her to a new housing development, threatened to shoot her if she did not cooperate, and forced her at gunpoint to undress and have intercourse with him twice. The prosecutrix testified that defendant was driving a Plymouth Fury, that she recognized the name "Willie" on a piece of paper attached to the steering wheel, and that she also saw something hanging from the dashboard in the shape of a small pine tree. After defendant completed the acts of intercourse, he wiped himself with a handkerchief and threw it out the window of the car. Defendant and the prosecutrix then got out of the car. Defendant placed his pistol on the roof of the car, took the prosecutrix' pocketbook from the back seat and

removed fourteen dollars and some change from it. Defendant told the prosecutrix that he was a dope addict and had to have money to support this habit.

After threatening to disfigure the prosecutrix if she told anyone what had happened, defendant drove the prosecutrix to a place near her home and let her out. She stayed away from home for awhile fearing that the defendant would return. When she finally went home, she called the police.

Officer S. E. Jolley testified that on 11 June 1971 he drove to the home of the prosecutrix in response to a call about an alleged rape. He accompanied the prosecutrix to a spot in a relatively uninhabited residential development where the prosecutrix stated the rape occurred. Officer Jolley found a fresh set of tire tracks and a handkerchief nearby. The officer then drove the prosecutrix to Charlotte Memorial Hospital where she was examined by Dr. James O. Johnson about 9:30 that night. Dr. Johnson testified that the prosecutrix was visibly upset, though not hysterical; that his examination of her vagina revealed the presence of non-moving or dead male sperm, and that in his opinion the prosecutrix had engaged in sexual intercourse within the previous twenty-four hours.

The prosecutrix gave Officer Jolley a description of her assailant and the car he drove. Defendant was arrested on 17 June 1971 by Officer D. T. Jones. When arrested defendant was driving a Plymouth Fury which matched the description given by the prosecutrix in color and design. On the steering column of the car was the automobile registration with defendant's name "Willie Harris" printed on it, and a small air freshener in the shape of a pine tree was hanging from the dashboard.

The evidence for the defendant tended to establish an alibi. Defendant testified that on the day and at the time of the alleged offenses, he was working in his sister's store and that he did not know the prosecutrix, nor did he rape or rob her. Defendant further testified that earlier that same day he had been to see a doctor at the Nalle Clinic and had been treated for an injury to his instep caused by slamming a car door on his foot, and that because of swelling the doctor had wrapped it.

Pauline Pharr, sister of the defendant, corroborated his testimony that on the date in question the defendant arrived at her grocery store about 2 p.m. and stayed until 7 p.m. She further testified that defendant's foot was bandaged, and that he was limping, though not in pain.

Carolyn Jordan, the supervisor of the record room at the Nalle Clinic, testified that the records of the Clinic showed that on 11 June 1971 a patient named Willie Jackson Harris was treated for a foot injury. The patient had the same date of birth and gave the same address as the defendant.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*Plumides & Plumides by John G. Plumides for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the refusal of the trial court to quash the bill of indictment for the reason that the grand jury panel and the trial jury panel excluded persons between the ages of eighteen and twenty-one. Defendant did not offer any evidence to show a systematic exclusion from the jury panel of persons falling within this age group. From the record we do not know that they were excluded. *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970) ; *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970). Assuming however that they were excluded, prior to 21 July 1971, G.S. 9-3 provided that only those persons twenty-one years of age or over were qualified to serve as jurors. G.S. 9-3 was amended by the 1971 General Assembly changing the age from twenty-one years of age or over to eighteen years of age or over, effective 21 July 1971. At the time the jury list in question was prepared, the jury commissioners were precluded by the provisions of G.S. 9-3 from placing the names of any person under twenty-one years of age on the jury list. G.S. 9-2 required that the jury commissioners "at least 30 days" prior to 1 January 1972 begin preparation of a new jury list for the ensuing biennium.

The bill of indictment in this case was returned on 7 September 1971. Thus, if there was any discrimination against the age group under twenty-one, it must have resulted from the

failure of the jury commissioners to place names representing such group on the jury list during the period from 21 July 1971 to 7 September 1971.

In *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972), Justice Branch, with reference to a similar motion to quash a bill of indictment returned by the grand jury in Forsyth County on 21 September 1971, stated:

> "We know of no reasonable method by which the Forsyth County Jury Commission could have obtained a fair cross-section of the age group in question within a period of two months and one day. None of the names of this age group appeared on the voter registration records; very few of such names appeared on the tax lists; a large number of this group would have been in school, and many of them, being still dependent upon their parents, would not have established an independent address.

\*     \*     \*

> "The absence from the jury list of the names of persons between the ages of eighteen and twenty-one for the short period of time here complained of [21 July 1971 to 21 September 1971] is not unreasonable, and does not constitute systematic and arbitrary exclusion of this age group from jury service."

In the present case an even shorter period of time intervened between 21 July 1971 and the date of the indictments. For the reasons stated by Justice Branch in *Cornell,* this assignment is overruled.

Defendant next assigns as error the denial of his motion for judgment as of nonsuit on the armed robbery charge. Defendant contends that there was no evidence to indicate that a gun was present or used during the time the alleged armed robbery occurred. The record does not sustain this contention. The prosecutrix testified:

> "At the time the defendant, Willie Harris, was taking my money from my pocketbook, the gun that I have been describing was sitting on top of the car, he had it up on the top of the roof. We were standing on the outside. The gun was on the roof of the car. I was standing right there. I was standing right there at him in relation to the defend-

ant, Willie Harris. I did not at any time reach for the gun. I have not ever recovered the money that Mr. Harris took."

G.S. 14-87 states:

"Robbery with firearms or other dangerous weapons.— Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than five nor more than thirty years."

[2] In the instant case, defendant threatened the prosecutrix with his pistol when he ordered her to get into his car and when he forced her to have intercourse with him. The prosecutrix testified that at all times she was in fear for her life and that although defendant placed his pistol on top of the car while he took her money, the weapon was easily within defendant's reach. The gist of the offense of robbery with firearms is the accomplishment of the robbery by the use or threatened use of firearms or other dangerous weapons whereby the life of a person is endangered or threatened. *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971); *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525 (1968); *State v. Williams,* 265 N.C. 446, 144 S.E. 2d 267 (1965). The evidence that defendant had a pistol within easy reach, that he had threatened the prosecutrix with it, and that she was in fear for her life when he took her money, was sufficient to go to the jury on the robbery with firearms charge. This assignment is overruled.

Defendant next contends that the trial court erred when it charged the jury on the issue of armed robbery. This assignment does not challenge the content of the charge; rather defendant contends that there was not sufficient evidence to submit to the jury the issue of armed robbery and that to charge on this offense was error. For the reasons stated above,

the trial court was correct in submitting the issue of armed robbery to the jury and in charging the jury on this issue. G.S. 1A-1, Rule 51.

Finally, the defendant contends that the trial court erred in overruling his objections to the following questions:

"Q. That would be it. What else at this time, Mr. Harris, are you presently under indictment for?

"Mr. Bell: Objection.

"Court: Overruled, exception.

"I'd rather not say.

"Q. Answer the question.

"A. Do I have to answer?

"Court: Yes.

"I have been indicted for rape. I have been indicted for rape in another case.

"Q. And that was alleged to have occurred on June 16, 1971, wasn't it?

"Mr. Bell: Objection.

"Court: Overruled, exception.

"I wouldn't know the exact date that the bill of indictment that charges me with rape is.

"Q. If I hand you the warrant in the case that was served on you, would it refresh your recollection?

"Mr. Bell: Objection.

"Court: Overruled, exception.

"That is what they have me charged for.

"Q. And you were indicted in that matter for the rape on June 16, 1971, on the body of one Ramona Lisa Spencer, is that not correct?

"Mr. Bell: Objection.

"Court: Overruled, exception.

State v. Harris

"I was indicted for the rape on June 16, 1971, on the body of Ramona Lisa Spencer.

"Q. That lady seated out there in the audience today in the red coat in the first row, is that not correct?

"MR. BELL: Objection.

"COURT: Overruled, exception.

"Q. Do you deny raping the woman in the red coat who just stood up in the first row on June 16, 1971?

"A. Yes, I (sic) have.

"EXCEPTION No. 3."

The recent case of *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971), reversed the long-standing rule as set forth in *State v. Maslin,* 195 N.C. 537, 143 S.E. 3 (1928), which, for the purpose of impeachment, permitted a defendant testifying as a witness in his own defense to be questioned concerning other indictments against him. In *Williams,* Chief Justice Bobbitt, speaking for the Court, stated:

"We now hold that, *for purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial. In respect of this point, we overrule *State v. Maslin, supra* [195 N.C. 537, 143 S.E. 3 (1928)], and decisions in accord with Maslin, on the basic ground that an indictment cannot rightly be considered as more than an unproved accusation."

Defendant in this case was tried before the decision in *Williams.* Defendant contends, however, that the rule adopted in *Williams* should be applied retroactively and that defendant should be granted a new trial for the error committed by the trial court in overruling his objections to questions concerning other indictments. We disagree. The change in the law that resulted from the *Williams* case was a change in a rule of evidence and affected no contractual or vested right of defendant. *Spencer v. Motor Co.,* 236 N.C. 239, 72 S.E. 2d 598 (1952). The Court merely altered a rule of evidence which it had adopted some forty-four years ago in *State v. Maslin, supra.* The Court can apply this new rule of evidence prospectively or retro-

actively as it sees fit. See *Rabon v. Hospital,* 269 N.C. 1, 152 S.E. 2d 485 (1967); *Mason v. Cotton Co.,* 148 N.C. 492, 62 S.E. 625 (1908); *State v. Bell,* 136 N.C. 674, 49 S.E. 163 (1904).

The United States Supreme Court, in dealing with recent developments in constitutional law, has been called on frequently to decide whether or not a new case will be given retroactive effect. See, *e.g., Adams v. Illinois,* 405 U.S. 278, 31 L.Ed. 2d 202, 92 S.Ct. 916 (1972); *Williams v. United States,* 401 U.S. 646, 28 L.Ed. 2d 388, 91 S.Ct. 1148 (1971); *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 16 L.Ed. 2d 882, 86 S.Ct. 1772 (1966); *Linkletter v. Walker,* 381 U.S. 618, 14 L.Ed. 2d 601, 85 S.Ct. 1731 (1965).

In *Linkletter v. Walker, supra,* the Supreme Court stated: " . . . (W)e believe that the Constitution neither prohibits nor requires retrospective effect." In determining when to grant retroactive effect to new standards in these recent cases, the Supreme Court has used three basic criteria: " . . . (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno, supra.* In *Stovall,* the Supreme Court refused to accord retroactive effect to *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967) and *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967). Those cases required the exclusion of identification evidence that had been tainted by exhibiting the accused to identifying witnesses before trial. The Court, per Mr. Justice Brennan, stated:

" . . . We have also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. See for example *Jackson v. Denno,* 378 U.S. 368. Although the *Wade* and *Gilbert* rules also are aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence, 'the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' *Johnson v. New Jersey, supra* [384 U.S.], at 728-729. The extent to which a condemned prac-

State v. Harris

tice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' 384 U.S., at 729. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice."

[3] Applying this language to the instant case, since *State v. Maslin, supra,* it has been an approved practice to cross-examine defendants as to prior or pending indictments, and no doubt such questions have been allowed in many trials which have resulted in guilty verdicts. To give *Williams* retroactive effect could easily disrupt the orderly administration of our criminal law. Doubt would be cast upon verdicts of guilty returned in those cases where such questions were asked and answered over objection. Prisoners convicted in such trials could seek release or new trials in post-conviction proceedings. See *Johnson v. New Jersey,* 384 U.S. at 731, 16 L.Ed. 2d at 891, 86 S.Ct. at 1780 (1966). Accordingly, we hold that the rule announced in *Williams* applies only to those trials begun after 15 December 1971, the date of the filing of the opinion in that case. *Johnson v. New Jersey, supra.* It should also be noted that in the present case the defendant's attorney, in cross-examining the arresting officer D. T. Jones, brought out the fact, without objection, that the officer had two warrants which he served on the defendant charging him with two separate crimes of rape and that Officer Jones had talked with defendant about the other rape charge. Had there been error in allowing the questions concerning the indictment in the other rape case, such error would not have been prejudicial. *State v. Wright,* 270 N.C. 158, 153 S.E. 2d 883 (1967) ; Stansbury, N. C. Evidence § 30 (2d Ed. 1963) ; 3 Strong, N. C. Index 2d, Criminal Law § 169.

Defendant having failed to show prejudicial error, the verdicts and judgments will not be disturbed.

No error.