STATE OF NORTH CAROLINA v. JOHN EARL EXXUM

No. 83A94

(Filed 3 November 1994)

**Homicide § 566 (NCI4th)— first-degree murder trial—imperfect self-defense—voluntary manslaughter—failure to instruct not error**

A defendant on trial for first-degree murder was not entitled to an instruction on voluntary manslaughter based on imperfect self-defense where the undisputed evidence showed that defendant shot the unarmed victim in the back as the victim was walking away from defendant, fired three more shots into the victim as the victim lay prone and unable to defend himself, and reloaded his weapon and again fired it in the direction of the victim's head, since there was no evidence that defendant believed it necessary to kill the victim in order to save himself from death or

STATE v. EXXUM

[338 N.C. 297 (1994)]

great bodily harm, and any such belief would not have been reasonable under the circumstances. Assuming *arguendo* that the evidence did merit a voluntary manslaughter instruction, the jury's rejection of the second-degree murder option and its finding defendant guilty of first-degree murder on the theory of premeditation and deliberation rendered any error harmless. Again assuming error *arguendo*, defendant failed to object at trial to the absence of a voluntary manslaughter instruction, and defendant has not carried his burden of establishing that the error amounted to plain error.

**Am Jur 2d, Homicide §§ 525 et seq.**

**Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

Appeal of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Thompson, J., on 9 June 1993 in Superior Court, Wake County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 10 October 1994.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charles L. Alston, Jr., Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was tried noncapitally on an indictment charging him with the first-degree murder of Bobby Simmons. The jury returned a verdict finding defendant guilty on the theory of premeditation and deliberation, and he was sentenced to life imprisonment. We find no error.

The State's evidence tended to show that on 17 August 1992 at approximately 5:08 p.m., law enforcement officers received a call about a shooting in front of a halfway house in Raleigh. Shortly thereafter, officers arrived at the scene and found the victim lying face-up in the street in a pool of blood. He had been shot four times: once in the neck, once in the elbow, once in the back, and once in the abdomen.

Ted Boyd, a resident of Raleigh, testified that he had heard the shooting. James Percy was unable to identify defendant as the perpetrator, but testified that he had seen someone shoot the victim several times while standing over him. Anthony Travis Bryant testified that he had both seen and heard the shooting while waiting at a stoplight. According to Bryant, defendant shot the victim once, knocking him down. Defendant then advanced on the victim while firing three more shots into the victim's prone body. Finally, defendant pulled the trigger a fifth time, but the gun did not fire. Defendant stepped back, reloaded, and discharged his gun in the direction of the victim's head. Four bullets were recovered from the victim's body, and a fifth was recovered from the street pavement.

The State's evidence further indicated that an argument had precipitated this event. Earlier in the day Eloise Dowtin, the owner and operator of the halfway house, had asked defendant, a resident, to move out because he had violated one of the "house rules." Following this request Dowtin and the victim left to run errands, expecting defendant to be gone when they returned. They returned, however, to find defendant standing in front of the house. After a brief argument, the victim threatened to "blow [defendant's] G.D. head off" and began walking toward the truck where he normally kept his gun. Defendant pulled his gun and fired the first shot as the victim walked toward the truck with his back to defendant. Following this first shot, Dowtin ran inside to call the police, but she heard several additional shots. As set forth above, defendant had advanced upon the victim and fired additional shots.

The trial court instructed the jury that it could find defendant guilty of first-degree murder, guilty of second-degree murder, or not guilty. It also instructed on self-defense. As noted, the jury found defendant guilty of first-degree murder on the theory of premeditation and deliberation.

Defendant contends it was plain error for the trial court not to instruct the jury on voluntary manslaughter, which is the unlawful

killing of a human being without malice and without premeditation and deliberation. *State v. Norris*, 303 N.C. 526, 529, 279 S.E.2d 570, 572 (1981). Under the law of imperfect self-defense, a defendant may be found guilty of voluntary manslaughter if: (1) the defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm; and (2) the defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; but (3) the defendant, although without murderous intent, was the aggressor in bringing on the difficulty; or (4) the defendant used excessive force. *Id.* at 530, 279 S.E.2d at 573; *accord State v. McAvoy*, 331 N.C. 583, 596, 417 S.E.2d 489, 493 (1992).

It is "an elementary rule of law that a trial judge is required to declare and explain the law arising on the evidence and to instruct according to the evidence." *State v. Strickland*, 307 N.C. 274, 284, 298 S.E.2d 645, 652 (1983), *modified on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). The trial judge is not required, however, to instruct the jury on lesser-included offenses " 'when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees.' " *Id.* (quoting *State v. Shaw*, 305 N.C. 327, 342, 289 S.E.2d 325, 333 (1982)). Thus, the question is whether there was evidence that would have supported a voluntary manslaughter conviction.

Defendant was not entitled to an instruction on voluntary manslaughter based on imperfect self-defense. The undisputed evidence showed that defendant shot the victim in the back as the victim was walking away from defendant. There was no evidence that defendant believed it necessary to kill the victim in order to save himself from death or great bodily harm. If defendant had presented evidence of such a belief, the belief would not have been reasonable under the circumstances, given that the victim was unarmed and walking away from defendant when defendant shot him. The victim thus posed no danger to defendant at the time. *See State v. Ross*, 338 N.C. 280, 449 S.E.2d 556 (1994).

Assuming *arguendo* that the evidence did merit a voluntary manslaughter instruction, the jury's rejection of the second-degree murder option, and finding defendant guilty of first-degree murder on the theory of premeditation and deliberation, renders any error harmless. In *State v. Freeman*, 275 N.C. 662, 170 S.E.2d 461 (1969), we held that if a jury, given the choice between first- and second-degree mur-

der, finds a defendant guilty of first-degree murder upon a theory of premeditation and deliberation, there is no harm in errors in instructions related to a lesser manslaughter offense. *See also State v. Young*, 324 N.C. 489, 492, 380 S.E.2d 94, 96 (1989) ("[E]rrors in voluntary manslaughter instructions are deemed harmless when the jury has chosen to convict for first degree murder rather than second degree murder."). The finding of premeditation, deliberation and malice required for a first-degree murder conviction precludes the possibility of the same jury finding the defendant guilty of a lesser manslaughter charge. *Id.* at 493-94, 380 S.E.2d at 96.

> A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of [defendant's] guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant.

*Freeman*, 275 N.C. at 668, 170 S.E.2d at 465.

Again assuming error *arguendo*, defendant has not carried his burden of establishing that the error amounted to "plain error." The "plain error" rule, to which defendant must resort because he failed to object at trial to the absence of a voluntary manslaughter instruction, "applies only in truly exceptional cases." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). "Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *Id.*

The uncontroverted evidence here established that defendant first shot his unarmed victim in the back as the victim was walking away from defendant. He then fired three more shots into the victim as the victim lay prone and unable to defend himself. After reloading his weapon, defendant again discharged it in the direction of the helpless victim's head. Given these uncontroverted facts, we cannot conclude that this is the truly exceptional case in which, absent an error in failing to instruct on voluntary manslaughter, the jury probably would have reached a different verdict. *See id.* at 40, 340 S.E.2d at 84.

NO ERROR.