STATE OF NORTH CAROLINA v. PENNY ELIZABETH JARRETT

No. COA99-441

(Filed 4 April 2000)

### 1. Evidence— exclusion—other evidence

There was no prejudicial error in a first-degree murder prosecution where the trial court refused to allow an evidence technician to read into evidence the dates on a mental health receipt found at the crime scene, but defendant subsequently was able to elicit the information through another evidence technician.

### 2. Criminal Law— prosecutor's closing argument—defendant a crackhead

Comments made by the prosecutor during closing arguments in a first-degree murder trial were within permissible bounds

STATE v. JARRETT

[137 N.C. App. 256 (2000)]

where the prosecutor argued that the defendant was a "crack-head" who shot the victim after he refused her money to purchase drugs and there was evidence that defendant used money taken from the victim to purchase crack cocaine, then sold his pistol and vehicle to obtain more crack. The argument that robbery was the motive was an alternate scenario to defendant's statement and was an inference from the physical evidence.

### 3. Robbery— shooting and taking—same transaction—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss a charge of robbery with a dangerous weapon where there was evidence from which it might reasonably be inferred that defendant took money from the victim after shooting him. It is appropriate to instruct the jury on armed robbery where evidence is presented which raises a reasonable inference that the robbery and murder were part of one continuous transaction.

### 4. Homicide— first-degree murder—manslaughter as lesser included offense

Any error in a first-degree murder prosecution in the court's failure to instruct on voluntary manslaughter was rendered harmless by the jury's verdict finding that defendant had acted with malice, premeditation, and deliberation.

### 5. Robbery— instructions—constructive possession of firearm

Any error in the trial court's instructions on possession of a firearm in a robbery prosecution was harmless where defendant shot the victim, put the pistol on a table within reach so that she could overcome any resistance while she decided what to do, and removed the victim's money from his pocket. She had already endangered the victim's life by shooting him and her access to the pistol constituted a continuing threat; the issue was whether the use of the pistol was close enough in time to the taking of the property to constitute one continuous transaction, not whether she threatened or endangered the victim's life.

### 6. Discovery— homicide victim's hospital records—not exculpatory

The trial court did not err in refusing to give defendant access to a homicide victim's entire hospital records where the records were subpoenaed by defendant, the hospital declined to produce

STATE v. JARRETT

[137 N.C. App. 256 (2000)]

the records, they were reviewed by the trial court in camera, some were provided to defendant with the remainder sealed, and the sealed records were examined by the Court of Appeals and found to contain no exculpatory information.

Appeal by defendant from judgments entered 24 August 1998 by Judge Clarence W. Carter in Guilford County Superior Court. Heard in the Court of Appeals 17 February 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Robert C. Montgomery, for the State.*

*Public Defender Wallace C. Harrelson, by Assistant Public Defender Randle L. Jones, for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from judgments entered upon her conviction, following a jury trial, of premeditated first degree murder and robbery with a dangerous weapon. Summarized only to the extent necessary to an understanding of the case and the issues raised on appeal, the State offered evidence tending to show that between 8:15 p.m. and 8:45 p.m. on 25 July 1997, defendant went to the High Point home of Johnny and Judy Neeley. Judy Neeley testified that defendant appeared nervous and upset. After recognizing defendant as someone who had previously worked with her daughter, Judy Neeley told defendant to come in and sit down. Defendant said "My life is over", and "I just killed someone." Defendant explained that she had killed a man after he had made sexual advances toward her and that she wanted to sell the man's pistol and vehicle in order to purchase drugs and take her own life. In order to get the pistol away from defendant, the Neeleys paid her $50 for it, but declined to purchase the vehicle. After defendant left their residence, the Neeleys contacted the police. Officer Kinney went to their residence and they turned the pistol, a .357 revolver, over to him.

At about 12:30 a.m. on 26 July 1997, defendant walked into the High Point Regional Hospital Emergency Room and told the triage nurse that she thought she had killed someone. She gave the nurse the name and address of Henry Draughn. The nurse reported this information to a police officer who was at the emergency room and officers were dispatched to the address which defendant had given. When the officers entered the house, they found Henry Draughn, an elderly man, on a sofa with his feet crossed and his hands beside his

body. He had been shot in the lower left side of his chest and was dead when the officers found him. The television was on and Draughn was wearing a nasal cannula connected to an oxygen tank. A medical examiner testified that Draughn's death resulted from the gunshot wound, and that the gun had been in close contact with his clothing and body when it was fired. The medical examiner also testified that Draughn had emphysema.

Defendant was taken from the hospital to the police department, where Detective Kim Soban advised her of her Miranda rights and interviewed her. Defendant indicated that she understood her rights and signed a written waiver. Defendant thereafter made a statement to Detective Soban in which she said that she had answered a newspaper advertisement placed by Draughn seeking someone to live in his house and do light housekeeping. Defendant said that Draughn had initially been nice to her, but on the second night she was there, he had tried to get into bed with her and began making comments of a sexual nature. On the night before Draughn's death, defendant found him peeping into her bedroom window and she became angry and confronted him.

On the next morning, Draughn took defendant shopping and bought an outfit and shoes for her. When they returned to his residence, Draughn asked defendant to put on the outfit so he could see how she looked. She changed into the new outfit and returned to the living room. Draughn began making sexually explicit remarks to her, grabbed her arm, and tried to kiss her. She pulled away and went into Draughn's bedroom and took a pistol from his night stand. She returned to the living room, hiding the pistol behind her back. Draughn made some additional remarks of a sexual nature to defendant and tried to pull her down again, at which time defendant pulled the pistol from behind her back and shot him.

Defendant said that she placed the pistol on a table and paced up and down; Draughn was bleeding and gasping for air. Defendant took $125 from Draughn's pocket and left the residence in Draughn's vehicle, taking the pistol with her. She purchased crack cocaine for $120, smoked it, and then went to the Neeley's. After selling Draughn's pistol to the Neeleys for $50, defendant went to an area known as "The Hood" and attempted to buy more crack cocaine, but she was "ripped off." She then sold Draughn's vehicle for a $50 rock of crack cocaine. After smoking the crack cocaine, defendant walked around for a while and eventually went to the emergency room.

The officers searched Draughn's residence and found a note in the kitchen which said "I lose control of how I feel." There was no evidence of a struggle, and the house had not been ransacked. In defendant's bedroom, the officers found condoms, birth control pills, some of Draughn's medications and a mental health receipt from the Guilford County Area MHDDSA Program.

In her brief, defendant presents arguments in support of seven of the fourteen assignments of error set forth in the record on appeal. Her remaining assignments of error are deemed abandoned. N.C.R. App. P. 28.

I.

[1] Defendant contends the trial court committed reversible error when it refused to allow police evidence technician Denise McGee, during defendant's cross-examination, to read into evidence the dates contained on the mental health receipt found at the crime scene. The trial court's refusal was based on the fact that the document had been neither identified nor offered in evidence. Defendant contends the information contained in the receipt was relevant to show defendant's "diminished capacity and defendant's state of mind at the time of the shooting," because it showed that defendant had recently been to the Mental Health Department for an appointment. Any error in the trial court's ruling was cured when the State subsequently offered the receipt into evidence and defendant was able to elicit information through the testimony of another evidence technician, Jane Poston. See *State v. Willis*, 332 N.C. 151, 420 S.E.2d 158 (1992) (holding that any error in the exclusion of evidence is cured by the subsequent admission of the evidence).

II.

[2] Next, defendant contends that comments made by the prosecutor during closing argument were so grossly improper as to warrant a new trial. The first comment about which defendant complains was the prosecutor's characterization of defendant as a "crack head"; the second was his hypothesizing to the jury that defendant shot Draughn after he refused her request for money to purchase drugs, when there was no evidence to support the argument.

The prosecutor is permitted, during closing argument, to argue fully all of the facts in evidence as well as all reasonable inferences which may be drawn therefrom. *State v. Perez*, 135 N.C. App. 543, 522 S.E.2d 102 (1999). A prosecutor is free to pursue a theory of a case,

or argue to the jury a scenario of what happened, so long as he or she does not stray beyond the bounds of the evidence presented at trial. *Id.*

In the present case, there was evidence that shortly after shooting Draughn, defendant used the money taken from his person to purchase a quantity of crack cocaine. After using the drugs, she sold his pistol and his vehicle in order to obtain additional crack cocaine. This evidence permits an inference, which the prosecutor was free to argue to the jury, that defendant's motive for shooting and robbing Draughn was to obtain money for drugs. Furthermore, the fact that defendant sought and used crack cocaine at least twice within a few hours following the shooting gives rise to a reasonable inference that defendant suffered from an addiction to crack cocaine, or at least was an experienced user of the substance. The argument was neither extreme nor of such content as to serve only to prejudice and inflame the jury, and the trial court did not abuse its discretion by overruling defendant's objection to the characterization of defendant as a "crack head."

As to defendant's second contention, the prosecutor's argument hypothesizing that robbery was defendant's motive for shooting Draughn was made in connection with his contention that defendant's statement with respect to the events leading up to the shooting was not entirely credible. The prosecutor stated:

> I ask you to apply your common sense to the evidence here, in thinking about Penny Jarrett's situation. The situation she was in, the way she was able to come in and take advantage of Mr. Draughn. So isn't it more likely to have happened this way. She goes and sees Henry Draughn. We know he's got the TV on. He's sitting in his own home, on his sofa here, watching TV, minding his own business, doing what he had a right to do, drinking some Budweisers, that he had a right to do, hooked up to his oxygen tank. And Penny comes in there and says to him, "I need some money for crack."

The prosecutor argued that another scenario could be inferred by the jury from the physical evidence that Draughn was found seated, with his feet crossed and his hands beside his body, rather than in a position which would have indicated that he was trying to pull defendant toward him when he was shot. We hold the prosecutor's argument was within permissible bounds and overrule these assignments of error.

## III.

**[3]** Defendant contends the evidence was insufficient to support her conviction of robbery with a dangerous weapon and that her motion to dismiss the charges should have been granted. A motion to dismiss must be denied if, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State, there is substantial evidence of each element of the offenses charged. *State v. Jacobs*, 128 N.C. App. 559, 495 S.E.2d 757, *disc. review denied*, 348 N.C. 506, 510 S.E.2d·665 (1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* ·at 563, 495 S.E.2d at 760-61.

G.S. § 14-87 defines the crime of armed robbery as follows:

(a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

The elements of robbery with a dangerous weapon are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim. *State v. Faison*, 330 N.C. 347, 358, 411 S.E.2d 143, 149 (1991). In this case, there is substantial evidence, when viewed in the light most favorable to the State, of each of these elements, i.e., there is evidence from which it may be reasonably inferred that defendant took money from Draughn's person after having shot him with a firearm. Although there was evidence from which it might also be inferred that the shooting and the taking of the money were two separate transactions, "[t]he evidence need not exclude every reasonable hypothesis of innocence in order to support the denial of a defendant's motion to dismiss." *Jacobs* at 563, 495 S.E.2d at 761 (quoting *State v. Parks*, 96 N.C. App. 589, 594, 386 S.E.2d 748, 751 (1989)). Where evidence is presented which raises a reasonable inference that the robbery and the murder are part of one continuous transaction, it is appropriate to instruct the jury on armed robbery. *State v. McDonald*, 130 N.C. App. 263, 502 S.E.2d 409 (1998). Defendant's

motion to dismiss the charge of robbery with a dangerous weapon was properly denied.

## IV.

**[4]** In case 97 CRS 12091, the trial court submitted as possible verdicts: guilty of first degree murder on the basis of premeditation and deliberation; guilty of first degree murder by reason of the felony murder rule; guilty of second degree murder; and not guilty. The jury found defendant guilty of first degree murder on the basis of malice, premeditation and deliberation. Defendant assigns error to the trial court's failure to submit the lesser included offense of voluntary manslaughter, arguing the evidence supported a finding that she acted in the heat of passion upon adequate provocation.

Voluntary manslaughter occurs "when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation or in the exercise of self-defense where excessive force is utilized or the defendant is the aggressor." *State v. McNeil*, 350 N.C. 657, 518 S.E.2d 486 (1999), *cert. denied*, —— U.S. ——, 146 L.Ed.2d 321 (2000). Any error in the trial court's failure to instruct on voluntary manslaughter was rendered harmless by the jury's verdict finding that defendant had acted with malice, premeditation and deliberation. *State v. Locklear*, 349 N.C. 118, 505 S.E.2d 277 (1998), *cert. denied*, 526 U.S. 1075, 143 L.Ed.2d 559 (1999); *State v. Singletary*, 344 N.C. 95, 472 S.E.2d 895 (1996); *State v. Exxum*, 338 N.C. 297, 449 S.E.2d 554 (1994). "The finding of premeditation, deliberation and malice required for a first-degree murder conviction precludes the possibility of the same jury finding the defendant guilty of a lesser manslaughter charge." *Exxum* at 301, 449 S.E.2d at 556.

## V.

**[5]** With respect to the charge of robbery with a dangerous weapon, the trial court instructed the jury:

> Now I charge that for you to find the defendant guilty of robbery with a firearm, the State must prove seven things beyond a reasonable doubt:

> First, that the defendant took property from the person of another or in his presence.

> Second, that the defendant carried the property away.

Third, that the person did not voluntarily consent to the taking and carrying away of the property.

Fourth, that the defendant knew she was not entitled to take the property.

Fifth, that at the time of the taking, the defendant intended to deprive that person of its use permanently.

Sixth, that the defendant had a firearm in her possession at the time she obtained the property.

And seventh, that the defendant obtained the property by endangering or threatening the life of that person with the firearm. To be guilty of robbery with a firearm, the defendant's use of the firearm must occur either before the taking of the property, at the same time as the taking, or the use of the firearm be so joined to the taking by time and circumstances as to make the use of the firearm and the taking part of one continuous transaction.

During its deliberations, the jury submitted the following question to the trial court: "Can we have a definition of the term (pocession) [sic] based on the charge of armed robbery?" After a discussion between the court and counsel, the jury was returned to the courtroom and the following exchange took place:

THE COURT: Do you need me to read the entire charge on robbery with a firearm?

JURY FOREMAN: No, sir.

THE COURT: You do not. Are you asking that, if I'm reading your question here, it says: "Can we have a definition of the term 'possession,' based on the charged [sic] of armed robbery." Is that what you're asking the Court?

JURY FOREMAN: Yes, sir. There's some concern as to the legal term of possession based on the firearm and the use of it in the robbery.

THE COURT: All right, I'll do the best I can. Possession of an article may be actual or constructive. A person has actual possession of an article if he has it on his person, is aware of its presence, and has both the power and intent to control its disposition or use. A person has constructive possession of an article if he does not have it on his person, but is aware of its presence, and has

both the power and intent to control its disposition or use. A person's awareness of the presence of an article, and his power and intent to control its disposition or use, may be shown by direct evidence or may be inferred from the circumstances.

Defendant objected to the foregoing instruction and, on appeal, contends it was error as a matter of law, entitling her to a new trial on the charge of robbery with a firearm.

The trial court is required to instruct the jury as to the essential elements of the offense charged and when the court undertakes to define the law, it must do so correctly. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). The charge must be viewed in context; isolated portions will not be held prejudicial when the instruction as a whole is correct. *State v. Bailey*, 280 N.C. 264, 185 S.E.2d 683, *cert. denied*, 409 U.S. 948, 34 L.Ed.2d 218 (1972).

Defendant cites *State v. Faulkner*, 5 N.C. App. 113, 168 S.E.2d 9 (1969) in support of her argument that the trial court erred in instructing the jury with respect to constructive possession. In *Faulkner*, this Court wrote that "actual possession and use or threatened use of firearms or other dangerous weapon is necessary to constitute the offense of robbery with firearms or other dangerous weapon." *Id.* at 119, 168 S.E.2d at 13. In *Faulkner*, however, the issue involved the nature of the alleged weapon, i.e., whether it was real or a toy, rather than the spatial relationship of the defendant to the weapon.

In *State v. Harris*, 281 N.C. 542, 189 S.E.2d 249 (1972), the defendant contended that he could not be convicted of armed robbery because he had placed his pistol on the top of the car while he took the victim's pocketbook from the back seat and removed money from it. He argued there was no evidence that he had the pistol in his possession at the time he took the property. The North Carolina Supreme Court found no merit in his contention; the weapon was "easily within [his] reach" at the time he took the money. *Id.* at 547, 189 S.E.2d at 252.

As earlier noted, G.S. § 14-87(a) uses the words "having in possession or with the use or threatened use of . . ." a firearm or other weapon. The gravamen of the offense of armed robbery is "the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons" in the perpetration of a robbery. *State v. Oliver*, 334 N.C. 513, 526, 434 S.E.2d 202, 208 (1993) (quoting *State v. Ballard*, 280 N.C. 479, 485, 186 S.E.2d 372, 375

(1972)). While we are not prepared to hold that one may be convicted of armed robbery based upon his or her constructive possession of a firearm or other dangerous implement, neither are we prepared to say that such could never be the case where a defendant has the power to threaten or endanger a victim's life through the use of an implement which may not be actually in the hand or on the person of the defendant. The resolution of this case does not require such a bright line decision.

In this case, even if the trial court erred in permitting the jury to consider whether defendant actually or constructively possessed the pistol, such error was harmless beyond any reasonable doubt. According to defendant's own statement, after she shot Draughn she put the pistol on a table, easily within her reach so as to overcome any resistance which he might offer, while she decided her course of action and removed the money from his pocket. She had already endangered Draughn's life by shooting him and her access to the pistol constituted a continuing threat. The issue created by the evidence was not whether defendant threatened or endangered Draughn's life with a firearm, rather the issue was whether such use of the pistol to threaten and endanger him was close enough in time to the taking of the property as to constitute one continuous transaction. The trial court's instructions upon this point were clear and correct, and any error in the instructions with respect to possession does not entitle defendant to a new trial. See N.C. Gen. Stat. § 15A-1443(a) (1998).

VI.

[6] In her final assignment of error, defendant contends the trial court erred in refusing to give her access to Henry Draughn's entire medical record maintained by High Point Memorial Hospital. She asks this Court to review the records to determine whether they contain any exculpatory information, to which she is entitled under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215 (1963), or information material and relevant to her defense.

Because the State did not possess the medical records, defendant did not make a *Brady* request, but sought disclosure of the records by a subpoena *duces tecum* directed to the hospital. The hospital declined to voluntarily produce the records, relying on the privilege contained in G.S. § 8-53. The trial court reviewed the documents *in camera* pursuant to *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L.Ed.2d 40 (1987), ordered that some of the records be provided to defendant, and sealed the remaining records for appellate review. See *State v.*

*Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977). We have carefully examined the sealed records and conclude that they contain no information exculpatory of defendant's guilt or material to her defense or punishment.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges WYNN and HUNTER concur.