STATE OF NORTH CAROLINA
v.
DONALD EDWARD SWEAT.
No. COA08-848
Court of Appeals of North Carolina.
Filed April 7, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by David W. Boone, for the State.
Bryan E. Gates, Jr. for defendant-appellant.
ROBERT C. HUNTER, Judge.
Donald Edward Sweat ("defendant") appeals from judgment entered upon his conviction for assault with a deadly weapon inflicting serious injury and for having attained habitual felon status. Where the State failed to present sufficient evidence of the identity of defendant as the perpetrator of the crime, the trial court erred in denying defendant's motion to dismiss. We reverse.
The State's evidence tends to show that between 7:00 p.m. and 9:00 p.m. on 23 February 2007, brothers Joe and John Hunter were returning from a turkey shoot when they drove to check John's mailbox, which was located on Cletus Road about a mile and a half from John's home. The mailbox had been moved temporarily to the intersection of Cletus and Buchanan Roads while construction was being done on Cletus Road. Joe was driving the car when they pulled up to the mailbox. John stepped out of the car to check the mailbox, which was empty, and when he turned back toward the car, he was attacked by an assailant. He was struck in the face and knocked to the ground, and struck in the face several more times as he tried to get up. John's cheekbone was cracked and his jawbone was broken by the blows. At that time, Joe Hunter got out of his car and told the assailant to leave John alone. The assailant threatened to kill Joe if he didn't get back in the car. Joe retreated. Meanwhile, John Hunter searched for his glasses which had been knocked off his face when he was hit. When he finally did find them, they were broken. John requires his glasses to see.
After the assailant forced Joe Hunter to retreat, he came back and put some type of knife to John's throat and told John if he moved, he would kill him. When John tried to get up again, the assailant cut John across the arm. The slash went through the sleeve of John's coat, and the cut later required nine stitches. The assailant told John, "I'm going to cut your damn head off." The assailant then left the scene. The Hunters then drove to John's house where they called the police at approximately 9:08 p.m. Neither John nor Joe could identify the assailant, and the only description they could give was that the assailant was a man or a boy. Neither of the two had seen defendant prior to being in court and neither could identify him as the attacker. Defendant's aunt, Vonnie Hall, also testified. At the time of the incident he was living with her on Buchanan Road near the intersection where John Hunter's mailbox was located. A five-acre lot separates Ms. Hall's house from the intersection. On the evening of 23 February 2007, she returned home between 8:00 and 8:30 p.m. and pulled in her driveway behind a car driven by defendant's friend with defendant riding as a passenger. She said she reprimanded them because previously they had been driving behind her with their bright lights on and traveling fairly closely behind her. At some point they passed her and ended up pulling into her driveway first. Ms. Hall testified that defendant then "started acting crazy" and arguing with his friend about having the high beams on. Defendant went outside and Ms. Hall watched him walk down the road in a direction away from the intersection with the mailboxes. Defendant came back to the house and said, "I can't satisfy nobody. I hurt everybody I see." He began giving his things to his aunt such as a watch and jewelry he was wearing and items in his pockets, including his wallet and a fold-up razor blade. Ms. Hall stated he used the blade to cut dogs' ears. Defendant went outside and began yelling, then asked his friend to take him to the jail. The two men left.
Ms. Hall later spoke with Detective George Whitaker about defendant. He took possession of the knife defendant had given to Ms. Hall. The knife was never tested, and the detective did not observe any blood on it. Magistrate Randy Carter testified that on the night of 23 February 2007 he was on duty when defendant came to his office. According to the magistrate, defendant stated that he "wanted to turn himself in, that he had hurt somebody, and he needed to be locked up." Mr. Carter contacted the Lee County Sheriff's Department and learned that a detective was investigating an incident where a person had been injured. Mr. Carter called Detective Whitaker, who shortly thereafter came to the sheriff's office and charged defendant.
Defendant did not present any evidence. At the close of the evidence, defendant moved to dismiss the charge on the basis of insufficient evidence. The trial court denied the motion. The jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury. Defendant was sentenced as a habitual felon to an active term of a minimum of 93 months and a maximum of 121 months imprisonment. From the judgment entered, defendant appeals and raises two issues: (1) whether the trial court erred in denying defendant's motion to dismiss, and (2) whether the trial court erred in accepting defendant's stipulation to having achieved habitual felon status.
Defendant argues that the State failed to produce sufficient evidence of his identity as the perpetrator of the crime. Defendant contends no evidence shows that defendant was present at the scene of the crime, and that his motion to dismiss should have been granted. We agree. When a defendant raises a motion to dismiss, the trial court must determine whether the State has presented "`substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.'" State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "`Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" State v. Jarrett, 137 N.C. App. 256, 262, 527 S.E.2d 693, 697 (2000) (quoting State v. Jacobs, 128 N.C. App. 559, 563, 495 S.E.2d 757, 760-61 (1998)). However, "`[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.'" State v. Scott, 356 N.C. at 595, 573 S.E.2d at 868 (quoting State v. Powell, 299 N.C. at 98, 261 S.E.2d at 117). "`This is true even though the suspicion aroused by the evidence is strong.'" State v. Myers, 181 N.C. App. 310, 313, 639 S.E.2d 1, 3 (2007) (quoting State v. Malloy, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983)).
In reviewing a decision on a motion to dismiss for lack of sufficiency of the evidence, we must view the evidence in the light most favorable to the State, including all reasonable inferences to be drawn therefrom. State v. Scott, 356 N.C. at 596, 573 S.E.2d at 869. Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal of the case. Id. With regard to circumstantial evidence, the Supreme Court of North Carolina has stated:
The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. State v. Bullard, 312 N.C. 129, 322 S.E.2d 370 (1984). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." State v. Stone, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then "`it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.'" State v. Thomas, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (alteration in original) (quoting State v. Rowland, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)).
State v. Barnes, 334 N.C. 67, 75-76, 430 S.E.2d 914, 918-19 (1993) (emphasis omitted). Ultimately, a determination of sufficiency of the evidence must be made on a case-by-case basis. State v. Myers, 181 N.C. App. at 313, 639 S.E.2d at 3.
Here, viewing the evidence in the light most favorable to the State, the evidence at most establishes the following: The victim was attacked at the intersection of Cletus and Buchanan Roads between 7:00 p.m. and 9:00 p.m. on the night of 23 February 2007; defendant lived near that intersection at his aunt's house on Buchanan Road; defendant arrived at his aunt's house on that evening sometime between 8:00 p.m. and 8:30 p.m.; defendant possessed a razor blade knife which could have caused the wound to John Hunter's arm; defendant made statements to Ms. Hall that night that "I hurt everybody I see" and needed to be locked up; defendant showed up at the magistrate's office stating that he "had hurt somebody." None of the witnesses, notably the victim and the victim's brother who were at the scene of the attack, could identify defendant as Mr. Hunter's attacker. No evidence was presented that defendant's razor blade had any blood on it, nor do any of defendant's statements tie him to the specific attack on Mr. Hunter that night or provide any details that would place him at the scene of the crime. At most, the State's evidence raises a suspicion of guilt. However, mere suspicion or conjecture of defendant's identity as the perpetrator of the attack on Mr. Hunter, even if strong, is not sufficient to survive a motion to dismiss. See State v. Scott, 356 N.C. at 595, 573 S.E.2d at 868. The evidence allows an inference that defendant had the opportunity to commit the crime, nothing more. See State v. Myers, 181 N.C. App. 310, 639 S.E.2d 1 (evidence that defendants were in the vicinity of a murder scene, had been seen struggling with an unidentified person, and that one defendant had blood on his shirt was insufficient to support an inference that defendant was guilty of murder). Despite the implication of guilt raised by the evidence, we are constrained to find that the evidence does not constitute substantial evidence of defendant being the perpetrator of the offense such that it could survive defendant's motion. Thus, we conclude that the trial court erred in denying the motion to dismiss and we reverse the judgment and commitment for assault with a deadly weapon inflicting serious injury.
Due to our decision to reverse based on insufficiency of the evidence, we need not address defendant's remaining argument regarding his habitual felon stipulation.
Reversed.
Judges McGEE and JACKSON concur.
Report per Rule 30(e).